UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HYDE PARK STORAGE SUITES
DAYTONA, LLC; and HYDE PARK
STORAGE SUITES, INC.,

    Plaintiffs,

v.

CROWN PARK STORAGE SUITES,
LLC; and RICHARD A. LOMAN,

    Defendants.

Case No. 6:20-cv-1320-RBD-RMN

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on Defendants' Motion on Entitlement to Attorney's Fees and Expenses (Dkt. 190), filed March 16, 2023. Plaintiffs oppose the motion (Dkt. 194) and filed a notice of supplemental authority (Dkt. 202). Upon consideration, and for the reasons discussed below, I respectfully recommend that the Court grant the Motion in part and deny it in part.

## I.    BACKGROUND

On July 24, 2020, Plaintiff Hyde Park Storage Suites Daytona LLC and Hyde Park Storage Suites, Inc. (collectively, "Hyde Park") instituted this action against Defendant Crown Park Storage Suites and Richard A. Loman

(collectively, "Crown Park"), asserting trade dress infringement (Count I), false designation of origin (Count II), federal trademark infringement (Count III), violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV), Florida common law unfair competition (Count V), unauthorized publication of photos under Florida law (Count VI), breach of contract (Count VII); and tortious interference with business relationships (Count VIII). Complaint ¶¶ 43-91, Dkt. 1.

After the close of discovery, the parties filed cross-motions for partial summary judgment. Dkt. 69; Dkt. 72. The Court denied both motions. Dkt. 124. The case then proceeded to trial, at which the Court denied Crown Park's two oral motions for judgment as a matter of law. Dkt. 177. The jury returned a verdict in favor of Crown Park (Dkt. 178) and a final judgment was entered in favor of Crown Park on March 3, 2023 (Dkt. 183).

Crown Park then moved for fees and expenses under section 42(a) of the Lanham Act, 15 U.S.C. § 1117(a). Dkt. 190 ("Mot."). Richard A. Loman ("Loman") also asks the Court to award him attorney's fees and costs incurred defending against the breach of contract claim. *Id.* at 1, 13. Crown Park seeks a total of $387,000.00 in attorney's fees. *Id.* at 14. Loman seeks a total of $256,000.00 in attorney's fees. *Id.* Hyde Park responded and filed a notice of supplemental authority. Dkt. 194 ("Resp."); Dkt. 202.

## II.  LEGAL STANDARDS

### A.  Attorney's Fees Under The Lanham Act

Section 42(a) of the "Lanham Act allows courts to award reasonable attorney fees to prevailing parties 'in exceptional cases.'" *Donut Joe's, Inc. v. Interveston Food Servs., LLC*, 116 F. Supp. 3d 1290, 1292 (N.D. Ala. 2015) (quoting 15 U.S.C. § 1117(a)). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), the Supreme Court construed a similar fee provision in the Patent Act, holding that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position" or the manner in which the party litigated the case. The Supreme Court also held that the standard for proving an exceptional case is a preponderance of evidence, not clear and convincing evidence. *Id.* at 1758. The Eleventh Circuit applies the *Octane Fitness* standard to cases brought under the Lanham Act. *Tobinick v. Novella*, 884 F.3d 1110, 1116-17 (11th Cir. 2018).

Determining whether a case is exceptional and, if so, whether to award attorney's fees is within the Court's discretion. *Tobinick*, 884 F.3d at 1117 (citing *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994)). That determination requires consideration of the totality of the circumstances and must be made on a case-by-case basis. *Octane Fitness*, 572 U.S. at 554. Courts consider a non-exhaustive list of factors including

"frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

**B.     Attorney's Fees Under Florida Law**

Loman's claim for fees under the terms of the lease agreement is controlled by Florida law. *See, e.g.*, *Davis v. Nat'l Med. Enterprises, Inc.*, 253 F.3d 1314, 1320 (11th Cir. 2001) (applying Florida law to a fee claim arising from an employment dispute). "When the parties to a contract determine that the prevailing party in any litigation shall be entitled to attorneys' fees, it is the court's duty to enforce the attorneys' fee provision in the parties' contract." *Id.* at 1321 (citation omitted).

### III.     ANALYSIS

This Report and Recommendation considers Crown Park's request for fees under the Lanham Act and then Loman's request for fees under the lease agreement.

**A.     Attorney's Fees Under The Lanham Act**

Crown Park argues that this case is exceptional based on two *Octane Fitness* factors: (1) the substantive strength of Hyde Park's litigating position; and (2) the manner that Hyde Park litigated its claims. *See* Mot. at 8–13. Hyde Park argues neither factor supports a finding that this case is exceptional. *See*

Resp. at 2. This Report and Recommendation addresses each factor and then discusses whether the totality of the circumstances supports an exceptional case finding.

### 1. Hyde Park's case was not so meritless as to support a finding that this case is exceptional.

Crown Park first advances the weakness of Hyde Park's case to support a finding that this case is exceptional. "[T]he superiority of a party's litigating position is a major determinant in whether a case will be deemed exceptional." *Ferrara Candy Co. v. Exhale Vapor LLC*, No. 2:17-cv-512-FtM-38MRM, 2018 WL 6261504, at *6 (M.D. Fla. July 30, 2018). But there is no precise rule or formula for determining whether a Lanham Act case is exceptional based on its lack of substantive strength. *Octane Fitness, LLC*, 572 U.S. at 554. "Instead, as with the other *Octane Fitness* factors, courts must use their discretion in considering the totality of the circumstances." *FCOA, LLC v. Foremost Title &Escrow Servs., LLC*, No. 17-23971-CIV, 2019 WL 7790856, at *3 (S.D. Fla. Oct. 17, 2019) (citation omitted).

On the one hand, courts in the Eleventh Circuit have awarded fees in cases where "a claim was found to be objectively baseless" or "where a plaintiff offered 'extremely weak arguments' to establish that its marks were protectable." *FCOA, LLC*, 2019 WL 7790856, at *3. On the other hand, courts have "declined to award fees where a plaintiff's claim was at least colorable."

*Id.* (citations omitted); *see also Sream, Inc. v. CIJ Enterprises, Inc.*, No. 18-80860-CIV, 2020 WL 1033351, at *4 (S.D. Fla. Mar. 3, 2020) ("[E]ven though Plaintiffs did not prevail, there appears to have been a reasonable basis for Plaintiffs to bring an infringement action in this instance."); *Plant Food Sys., Inc., v. AgroSource, Inc.*, 2017 WL 4155356, at *6 (S.D. Fla. July 19, 2017) (declining to award fees where losing party's position during preliminary injunction hearing was not "frivolous or completely unsupported by the evidence").

Crown Park asserts three main reasons why Hyde Park's case was weak: (a) the asserted trade dress was weak or functional; (b) no consumer was confused; and (c) Hyde Park produced no evidence of damages. Mot. at 8–10.

    **(a)**     **Hyde Park's assertion of a protectable trade dress interest is not frivolous.**

In support of its assertion that the trade dress was weak or functional, Crown Park points to the way Hyde Park described its trade dress (deriding it as "word-salad," *id.* at 8), the absence of evidence of secondary meaning for the trade dress, *id.* at 10, and evidence that certain aspects of Hyde Park's trade dress were imposed by local building codes, *id.* at 10. Hyde Park counters each point. Resp. at 6–7 (countering word-salad argument), 10–12 (addressing secondary meaning argument), 13–14 (arguing the evidence showed the trade dress' elements are primarily non-functional).

*First*, the way in which Hyde Park described its trade dress does not support a finding that this case is exceptional. Hyde Park was simply doing what was required to prosecute its claims. Defining the elements of trade dress is a fundamental part of this type of litigation. "A plaintiff must describe with words the distinctive features of trade dress." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 237 F. Supp. 1230, 1235 (M.D. Fla. 2017). That is necessary because a factfinder, either a jury or the Court, cannot be expected to distill the distinctive features of a product from pictures alone. *See id.* (quoting *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 747 (E.D. Mich. 2014)).

*Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F. Supp. 2d 1241 (M.D. Fla. 2012), provides an example of why courts require plaintiffs in trade dress cases to describe their trade dress with particularity. There, the plaintiff claimed to have a protectable interest in a family of products that consisted of metal frame and mesh shipping containers. *Id.* at 1245–46, 1254–55. The plaintiff could not clearly articulate what features of the products merited protection when it applied for a temporary restraining order, when it filed an amended complaint, or even when it moved for summary judgment. *Id.* at 1257. Based in part on the plaintiff's shifting characterization of its trade dress, the court granted summary judgment in favor of defendant, reasoning that neither the court nor the accused infringer could be expected to

"evaluate the total commercial impression of a product" if the plaintiff cannot "precisely define its trade dress." *Id.* at 1256–57.

Put simply, though one may deride the use of words to describe trade dress as "word-salad," it is a necessary exercise used to ensure the essential distinctive elements of the trade dress are precisely defined.

*Second*, the record of secondary evidence in this case is thin, but not so lacking that the assertion of a protectable interest is not colorable. True, Hyde Park did not rely on survey evidence—a common type of evidence used to show a trademark has acquired secondary meaning—and its advertising evidence was weak. But as Hyde Park points out, it did offer evidence that Crown Park intentionally copied its structures. Resp. at 10–12 (describing evidence of copying adduced at trial). Indeed, there is some evidence in the record on which the jury could have found that Crown Park was trying to pass itself off as a Hyde Park project. *See* JX63 ("I am using the same layout and design"), JX69 ("If you would like to see the structure that I am building go to www.hydepark storagesuites.com."), JX82 ("Hyde Park RV Storage Resort").[1] Such proof of intentional copying is "probative evidence" of secondary meaning. *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983). Furthermore,

---

[1] This Report and Recommendation rejects the argument that the statement from Crown Park's contractor that it was building a "Hyde Park wannabe" is evidence of secondary meaning for the same reason that argument was rejected previously. *See* Dkt. 124 at 28 n. 25.

as the Court noted previously, even if there is no evidence that the public associated a mark with a particular source, advertising evidence is probative of secondary meaning, albeit weak evidence. *See* Dkt. 124 at 17 (citing *Brooks Shoe*, 716 F.2d at 860). And so, the record was not devoid of evidence of secondary meaning.[2] The evidence was just not convincing.

*Third*, evidence showing certain aspects of Hyde Park's trade dress were imposed by local building codes does not support a finding that this case is exceptional. *See* Mot. at 10. As Hyde Park explains in its opposition, it offered testimony of an expert witness at trial who opined that certain elements of Hyde Park's trade dress are primarily non-functional. Resp. at 13–14. True, that testimony was undercut by the expert's belated review of the local building codes. But that point goes to the strength of Crown Park's cross-examination and the weight given by the jury to the expert's opinion. That the jury credited Crown Park's cross-examination and evidence over Hyde Park's expert testimony does not make this an exceptional case.

In sum, Hyde Park's assertion of a protectable trade dress interest is not so lacking as to be frivolous.

---

[2] Many of these arguments were made by Crown Park in its summary judgment briefing and previously rejected by the Court. *See* Dkt. 124 at 17–19. That a jury returned a verdict in Crown Park's favor since then does not change the validity of the Court's observation that a reasonable jury could infer from the evidence presented an intent to confuse that is also probative of secondary meaning.

**(b) That Hyde Park offered only weak evidence of consumer confusion does not support finding this case exceptional.**

Next, Crown Park contends that the lack of evidence of consumer confusion supports a finding that this case is exceptional. Mot. at 9. Hyde Park retorts that it did present evidence of consumer confusion: the testimony of Mr. Mahl. *See* Resp. at 14. Though Crown Park attacks Mr. Mahl's testimony as hearsay, it is nonetheless evidence that the jury could have relied on to find confusion in the marketplace. That the jury did not so find (and indeed, did not need to because it determined Hyde Park did not prove it had a protectable interest in its trade dress)[3] reflects more on the strength of Crown Park's defense than on whether Hyde Park's case was frivolous.

Further, as noted above, there is some evidence in the record on which the jury could have found that Crown Park was trying to pass itself off as a Hyde Park project. Even though it found Hyde Park's evidence unconvincing, the jury could have found confusion here based on the evidence offered that suggested intentional copying occurred.

---

[3] One cannot tell from the verdict what the jury thought of the strength of Hyde Park's likelihood-of-confusion case because whether a party has a protectable interest in a trademark is a "threshold inquiry" that may render, like it did here, "the likelihood-of-confusion inquiry superfluous." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1187 n. 17 (11th Cir. 2011).

### (c) That Hyde Park did not prove actual damages is not a basis for finding this case exceptional.

Crown Park also contends this case is exceptional because Hyde Park offered no testimony or evidence that it suffered any actual damages. Mot. at 9. Crown Park misses the mark. A successful plaintiff is not always entitled to monetary damages under the Lanham Act. *See, e.g.*, *City Messenger of Hollywood, Inc. v. City Bonded Messenger Service, Inc.*, 254 F.2d 531, 536 (7th Cir. 1958) ("If, on a retrial of this cause, a finding of unfair competition is made, it does not necessarily follow that the prevailing party is entitled to a monetary award or an accounting of profits. An injunction may satisfy the equities of the case."). That Hyde Park chose to forgo offering evidence of actual damages does not necessarily mean prosecution of its claims is untoward. Hyde Park could be motivated by the need to right a perceived wrong or to obtain an injunction that would prevent a perceived copy-cat competitor from operating nearby. Neither motivation requires an award of actual damages, and both can be assuaged by an appropriate equitable remedy.

In sum, none of the arguments advanced by Crown Park that Hyde Park's case is weak support finding this case exceptional.

### 2. The Manner That Hyde Park Litigated This Case Does Not Support A Fee Award.

Crown Park also contends that the way in which Hyde Park prosecuted its claims supports finding this case exceptional. Mot. at 10–13. "A case will

- 11 -

not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim." *Tobinick*, 884 F.3d at 1119. It is only in "the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555.

### (a) Hyde Park's litigation positions were weak, not frivolous.

Crown Park argues that the thinness of evidentiary support presented at trial, as well as the Court's comments when ruling on the parties' motions for summary judgment and Loman's Rule 50 motion, show that Hyde Park's efforts to litigate its claims were unreasonable. Mot. at 10. That argument gets it exactly backwards. Typically, a court finds a trademark case exceptional when a litigant persists even after the litigant is told multiple times that its arguments will not support its claims. For example, in *Tobinick*, the Eleventh Circuit held the district court did not abuse its discretion in determining that that case was exceptional where the district court had ruled against the plaintiffs in three separate orders. *Tobinick*, 884 F.3d at 1118–19. The plaintiffs nevertheless pressed on despite these losses, "repeatedly fail[ing] to produce new arguments or evidence to distinguish the Court's prior rulings," and belatedly attempting to "inject new issues into the proceedings," specifically by making unsupported allegations of perjury and moving to add

parties and claims. *Id.* In other words, the Eleventh Circuit agreed plaintiffs had acted in bad faith. *See id.* ("The Eleventh Circuit has traditionally interpreted the Lanham Act's exceptional case standard to allow for the award of fees 'only in exceptional circumstances and on evidence of fraud or bad faith.'").[4]

Rather than repeatedly ruling against Hyde Park, the Court ruled in its favor on summary judgment, allowing the trade dress and other claims to be decided by the jury. *See* Dkt. 124 at 10–24. In its order on summary judgment, the Court did comment on the weakness of Hyde Park's case, but it nevertheless found that Hyde Park offered sufficient evidence for a reasonable jury to find in Hyde Park's favor on each element of the trade dress claim. *See id.* at 19 (finding a jury issue on distinctiveness), 23 (same on the issue of the functionality of the trade dress), 28–29 (same on the likelihood-of-confusion

---

[4] There is some tension between the Eleventh Circuit's reasoning in *Tobinick* and that of earlier Supreme Court decisions interpreting fee-shifting provisions of other federal statutes. *Compare Tobinick*, 884 F.3d at 1118–19 (the Lanham Act's provision requires a showing of bad faith or fraud) *with Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 419 (1978) (noting that Congress could not have intended to award fees to prevailing defendant in a Title VII case only where a plaintiff acted in bad faith because an award of fees in those circumstances "has long been established . . . even under the American common-law rule"). But that may be because of the Supreme Court's divergent interpretations of fee-shifting provisions in different statutes. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994) (Thomas, J., concurring in judgement) (explaining that the Court's interpretation of the fee-shifting provision of the Copyright Act appears to be "flatly inconsistent" with *Christiansburg Garment Company*).

issue). The Court's comments regarding the strength of Hyde Park's claims therefore are not tantamount to a finding of bad faith. As the Federal Circuit noted recently, "[w]hen a district court, fully aware of the competing contentions of the parties, declines to end the case on summary judgment and allows a plaintiff's case to proceed," the court "effectively determined that the position of the party opposing summary judgment is not objectively baseless." *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, -- F.4th ----, No. 2022-1099, 2023 WL 3589782, at *9 (Fed. Cir. May 23, 2023). That observation holds true here.

### (b) Crown Park's other arguments do not support finding this case exceptional.

Crown Park turns again to many of the arguments that it made in connection with the first factor to support its claim that this case should be found to be exceptional. Mot. at 10–12. First, while the jury did find in Crown Park's favor on the trade dress claim, the verdict is not an indictment of Hyde Park's litigation tactics. *See Christiansburg Garment Co.*, 434 U.S. at 421 (noting "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case"). That kind of *post hoc* reasoning has been roundly rejected in the context of the fee-shifting provisions of other statutes, and it should be rejected here too. *See id.* (in a Title VII case, reasoning that, such "hindsight logic could

discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success").

Nor does the length of this case or Hyde Park's persistence support finding this case exceptional. *See* Mot. at 11. To start, "a fair adversary process presupposes both a vigorous prosecution and a vigorous defense." *Christiansburg Garment Co.*, 434 U.S. at 419. Both parties in this case pursued their claims vigorously. Zealous advocacy is not grounds for a fee award.

Furthermore, blame for at least some of the delay in this case rests squarely on Crown Park's shoulders. Indeed, the Court extended the pretrial deadlines and reopened discovery because of Crown Park's discovery violations. *See, e.g.*, Dkt. 109; Dkt. 110. There is no reason for the Court to exercise its discretion to award fees for circumstances caused at least in part by Crown Park's own actions.

And though Crown Park takes issue with the unregistered status of Hyde Park's trade dress, that fact does not make this case exceptional. While it has not always been so, Congress expressly decided to create a right of action for unregistered trademarks under section 1125(a). *See* Trademark Law Revision Act of 1988, Pub. L. No. 100–667, § 132, 102 Stat. 3935, 3946 (codified at 15 U.S.C. § 1125(a)); *see also Matal v. Tam*, 582 U.S. 218, 225 (2017) ("[E]ven if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act, which creates a federal cause of action for

trademark infringement." (citation omitted)). Finding a case exceptional based on a trademark's unregistered status would undermine Congress's decision to extend the Lanham Act to allow for the enforcement of unregistered marks. It also would upend the long, common law history of enforcing such rights. *See, e.g.*, *Matal*, 582 U.S. at 224 (noting that federal law did not create trademark rights).

### (c) Hyde Park's pre-suit investigation counsels against an exceptional case finding.

Hyde Park raises several arguments against finding this case exceptional, only one of which merits extended discussion: its pre-suit investigation. Resp. at 16. Before filing this lawsuit, Hyde Park engaged a well-known intellectual property attorney and law professor to assess the strength of its trade dress and claims against Crown Park. *See id.* at Ex. A (Report of K. Muller). After considering a limited set of facts, the attorney opined that Hyde Park's trade dress was non-functional and distinctive, and that Crown Park's project infringed upon it. *See id.* Hyde Park disclosed the report to Crown Park at the outset of this case. Resp. at 5.

Though one could quibble about the depth of the expert's analysis, Hyde Park performed at least some pre-suit diligence. It is reasonable for a trademark holder to rely on the expertise of counsel to perform a pre-suit investigation and conduct the necessary due diligence before filing suit. Such

circumstances weigh against finding a case exceptional even if the pre-suit investigation was less than ideal. *Cf. Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239, 2016 WL 1533697, at *14 (D. Del. Mar. 31, 2016) (reasoning a pre-suit investigation, though flawed, nevertheless weighed against finding a case exceptional under the Patent Act).

### 3. The totality of the circumstances does not support finding this case exceptional under the Lanham Act.

In the end, none of the arguments raised by Crown Park—standing alone or in combination—warrant finding this case exceptional under the Lanham Act. Hyde Park's claims survived summary judgment, though the jury was ultimately unpersuaded. Considering the governing law and the facts of the case under the preponderance of the evidence, I conclude that Crown Park has not demonstrated that this is an exceptional case under 15 U.S.C. § 1117(a). Further, given that the claims were not objectively unreasonable, the Court should exercise its discretion and not award fees under the Lanham Act.

## B. Attorney's Fees Under the Lease Agreement

Loman also moves for fees under the attorney's fees provision of the Hyde Park lease agreement. Mot. at 13–14. Hyde Park does not contest Loman's entitlement to fees under the agreement, arguing only that Loman has not demonstrated that the fees are distinct from those spent on the trademark claims and that the motion is procedurally improper. Resp. at 19–20.

*First*, the motion is not procedurally improper. Local Rule 7.01 provides that a party claiming attorney's fees must initially obtain an order that determines the party's entitlement. The entitlement motion must only state the amount sought or include a fair estimate of that amount. *See* Local Rule 7.01(b)(2). Loman complied with the Local Rule by including a statement of the amount of fees he seeks. Mot. at 14.

*Second*, the agreement provides that the prevailing party in an action to enforce any part of the lease "shall be entitled to recover reasonable attorney's fees and costs." JX51 at 5. The jury decided in Crown Park's and Loman's favor on each claim at trial (Dkt. 178), and so there can be no dispute that Loman is entitled to an award of attorney's fees under the agreement. *See Point E. Four Condo. Corp. v. Zevuloni & Assocs.*, 50 So. 3d 687, 688 (Fla. 4th DCA 2010) ("When one party loses in an action for breach of contract, the adverse party is the prevailing party.").

To avoid this result, Hyde Park argues that Loman is not entitled to any fees unless he can allocate his costs to only the claim for which fees may be awarded. Resp. at 19 (citing *Durden v. Citicorp Trust Bank*, 763 F. Supp. 2d 1299, 1307 (M.D. Fla. 2011)). This argument is typically raised by litigants in Florida not to limit the amount of fees awarded but rather to dispute whether the movant is entitled to fees as a prevailing party. *See, e.g., Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-CV-1306-J-34JRK, 2017 WL 1080000, at *5 (M.D. Fla.

Mar. 22, 2017) (explaining "the factors to be considered in determining which party is a prevailing party" under *Prosperi v. Code, Inc.*, 626 So. 2d 1360 (Fla. 1993)). Indeed, under Florida law, "if each claim is separate and distinct and would support an independent action, 'the prevailing party on each distinct claim is entitled to an award of attorneys' fees for those fees generated in connection with that claim[,]' so long as there is a legal basis for such a fee award." *Id.* (quoting *Davis*, 253 F.3d at 1320). Loman is entitled to a fee award as the prevailing party on the contract claim. So, Hyde Park's argument misses the mark. It contests the scope of the award, not the award itself.

Loman is entitled to the attorney's fees he incurred defending against Hyde Park's breach of contract claim to the extent those costs are segregable from the fees incurred defending against Hyde Park's other claims.

## IV.   CONCLUSION

Accordingly, it is respectfully **RECOMMENDED**:

1. Defendants' Motion on Entitlement to Attorney's Fees and Expenses (Dkt. 190) be **GRANTED in part** and **DENIED in part**.

2. The Court should find Defendant Richard A. Loman is entitled to attorney's fees and costs pursuant to clause 27 of the lease agreement. The Court should deny all other relief sought in the motion; and

3. The Court should direct the parties to confer regarding the amount of the attorney's fee due under the lease agreement. The Court should direct

Crown Park to file a motion for a determination of an award no later than 14 days after the order adopting this Report and Recommendation if the parties cannot reach an agreement as to the amount of fees incurred defending against Hyde Park's breach of contract claim.

## **NOTICE TO PARTIES**

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Orlando, Florida, on June 14, 2023.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies furnished to:

Counsel of Record